**FLORES v. THE NEW REX et al.**
**The PETRINA F.**

No. 25613.

United States District Court
N. D. California, S. D.

Jan. 11, 1951.

458

Joseph L. Alioto, Robert J. Drewes, San Francisco, Cal., for libelant.

Derby, Sharp, Quinby & Tweedt, San Francisco, Cal., for respondent.

ERSKINE, District Judge.

The libel in this case charges that the purse-seiner owned by the libelant, towit, the Petrina F, collided with the purse-seiner owned by the respondent Vincent Spadaro on the 18th day of January, 1949, at approximately ten o'clock p. m. The location and facts of the accident as indicated by the evidence are not accurately alleged by the libel. The answer to the libel is more accurate in this respect. It sets forth the facts substantially as proven by the evidence. Its allegations in this respect are as follows: "Both vessels were fishing for sardines south of Anacapa Island. The weather was clear, with the tide setting in an easterly direction. About ten o'clock on the evening of January 18, 1949, the New Rex made a circle to her left, paying out her net in the routine maneuver known as 'making a set,' at the conclusion of which she remained motionless in the water with her bow facing south, being fast to the two ends of the net which then formed a closed circle on her port, or easterly side. At approximately the same time, the Petrina F, being somewhat east of the area occupied by the New Rex and her net, completed a set with the bow of the Petrina F facing north, and the net of the Petrina F forming a circle to the left, or westerly side of that vessel. The two vessels were then motionless in the water, facing in opposite directions, with their nets between them. At the time of the completion of the set by the New Rex, there was ample space between her net and that of the Petrina F. The New Rex then began the operation of 'pursing', or drawing in her net by means of her winch. During this operation, the New Rex was not propelled through the water by her engine, but remained stationary in the water, fast to the ends of her net. Suddenly, it was discovered that the two vessels had drifted together, with their nets between them, cutting and damaging both nets." (Answer pp. 2–3.)

The weight of the evidence shows that at the time these two fishing vessels set their nets they were approximately a half a mile apart and facing in opposite directions, and that according to custom and practice and the conditions existing at the time setting their nets this distance apart was not dangerous or careless on the part of either fishing vessel. The libelant's vessel was east of respondent's vessel. The tide at that time was moving east at the rate of about four or five miles an hour. At the time of setting their nets and drawing them in both vessels had lighted all the lights required by custom and regulations. Apparently when the Patrina F drew in her cable for the purpose of pursing the net it caught on some obstruction at the bot-

tom of the ocean which held her fast, so that she did not drift with the tide. In the meantime the respondent's vessel unnoticed by the crews of either vessel was drifting down upon her. Eventually they came into contact and shortly thereafter the cable that was holding libelant's vessel was loosened and the vessels parted, but not in time to save damage to the nets of each. Libelant claims that respondent set his net on the top of libelant's net, but the evidence shows that is not correct and that at the time respondent's net was set it was approximately one-half a mile from libelant's net. Not only the crew of the respondent's vessel, but also the crews of the various other fishing craft which came to the rescue all state that libelant's vessel was held fast and that the tide was streaming by it. Libelant claims that respondent had no lookout and gave no warning. Under the circumstances warning and lookout could have done no good and hence was not the cause of the accident. Lind v. U. S. A., 2 Cir., 156 F.2d 231, 1946 A.M.C. 971.

■ Neither fishing vessel had a lookout. At the time of drawing in nets all men were working on the vessels and it is not customary to keep a lookout. According to authority the duty to maintain a lookout rests upon a navigating vessel. These vessels were not at the time of the collision engaged in navigating as indicated by the authorities referred to hereinafter.

■ It is contended that respondent should have given warning by whistle, bell or otherwise, but again we are confronted by the fact as hereinafter shown that the warning under the particular circumstances would have meant nothing, that neither vessel could have been extricated at the time of any such warning. It is further contended that the dropping of an anchor by respondent's vessel might have prevented the collision. However the weight of the evidence is to the contrary, and in view of the depth and drift required for such an anchor to take hold it seems to me the evidence is not sufficient to sustain such a theory.

■ Practically all of the witnesses, including the disinterested captains of nearby fishing vessels state that a fishing vessel or a purse-seiner cannot navigate when it is in a set, towit, when it has dropped its nets and is drawing them in. The standard of care required of fishing vessels when in a set is that of a reasonable man in trade. See The Marpesia, 1 Asp. 261, 264.

The helpless state of vessels with nets is recognized in Navigation Rules and cases. The Dunelm, V Asp. 304, 308: " * * * as every one knows, vessels when fishing are attached to their nets. They are not then under way; that is, they do not enjoy the same liberty of movement as they would when under way. They are then much more like a vessel at anchor than like a vessel under way. They have not the same command over themselves. Should it become necessary for them to go forward they could not easily do so on account of the weight of their nets, especially so in the case of trawlers. Assuming them to be steamers, if they backed, they would back into their own nets, and their screw or paddles would become hopelessly entangled in them. Therefore they are in an extremely helpless state."

■ In the case of Nick Joncich v. J. D. Martino,[1] U.S.Dist.Ct.No.Dist. of Calif. #23168–S, Judge St. Sure held that in view of the custom of the industry and of the helplessness of fishing vessels at the time of the setting of the nets, and in view of the conditions then existing (which were very similar to those in this case) that it could not be said that the libelant there had sustained the burden of proof. I feel the proper judgment in this case would be to apply the above-quoted principles from the Dunelm case and the above-mentioned decision of Judge St. Sure. Accordingly I find that the collision was inevitable, and was not due to the fault of the libelant or respondent, and that judgment should be that libelant take nothing and respondent have judgment for costs. Proctor for respondent may prepare findings of fact and conclusions of law and judgment.

1. No opinion for publication.